**Jewell TURNER, Delores J. Rickard, John Anthony, and David L. Cullen, Appellants,**

v.

**Wayne COLE, Judy Green, Chris Villines, Ralph Duncan, Townes Summers, Martin Boswell, Charles McDowell and City of Providence, Webster County, Kentucky, Appellees.**

Court of Appeals of Kentucky.

Dec. 2, 1977.

Steve P. Robey, Providence, for appellants.

Aubrey R. Mooney, Chandler & Mooney, Providence, for appellees.

Before GANT, VANCE and WILHOIT, JJ.

GANT, Judge.

Appellant, Jewell Turner, was the Chief of Police in Providence, Kentucky, a city of the fourth class, having been appointed to fill out the unexpired term of his resigned predecessor. On October 27, 1975, the "lame duck" city council enacted an ordinance adopting the provisions of "Sections 90.310 to 90.410 of the Kentucky Revised Statutes" and applying them to "all employees in the Police and Fire Departments of the City of Providence except as specifically included (sic) from time to time." A civil service commission was created, its members sworn in, but no pension fund was created nor was any tax levied or provided for. On December 22, 1975, the same "lame duck" council "voted" to include all other departments of the city under Civil Service but did not enact an ordinance to that effect. On January 5, 1976, a new council was in office and voted to repeal the ordinance of October 27, 1975, and did not rehire the appellant but hired a new Police Chief, one Raymond Ray. This action was filed by appellant seeking restoration to his position as Chief of Police, which was denied by the Webster Circuit Court in a summary judgment. In that action, a motion to intervene was filed by two members of the Civil Service Commission, Delores J. Rickard and John Anthony, and by a city employee who was not a member of the police or fire department, David L. Cullen. This motion was denied.

There are four questions presented to this Court. The first is whether a city of the fourth class can adopt the provisions of KRS 90.300 to KRS 90.420 and apply them to police and fire departments. Those particular sections include KRS 90.300(2) which provides:

The provisions of KRS 90.310 to KRS 90.410 are independent of and do not affect the laws governing the police and fire departments, nor their pension funds, in cities of the second and third classes.

The conflict occurs when we consider KRS 95.761, which section is contained under the chapter entitled "City Police and Fire Departments" and states in pertinent part as follows:

(1) Any city of the fourth or fifth class which has now, or in which there may be hereafter established a regular police or fire department in the future, *may by ordinance create a civil service commission,* whose duties shall be to hold examinations as to the qualifications of applicants for employment within the police or fire departments.

\* \* \* \* \* \*

(3) A city of the fourth or fifth class is authorized to adopt the provisions of KRS 90.300 to 90.420 governing civil service, the same as a city of the third class.

Thus we have one provision which says that cities of the fourth and fifth class have the same rights concerning the civil service commission statute as a city of the third class and another statute stating that a city of the third class cannot apply those sections to a police or fire Department. The question presented is one of statutory construction. The courts have long held that "where two statutes seemingly conflict, courts must harmonize them and give them such construction as will give effect to each if possible." *General Motors Acceptance Corporation v. Shuey,* 243 Ky. 74, 47 S.W.2d 968 (1932); *Tubbs v. Commonwealth,* 248 Ky. 24, 58 S.W.2d 236 (1933); *Lewis v. Moseley,* 215 Ky. 573, 286 S.W. 793 (1926). In *Louisville Railway Company v. Dugan,* 179 Ky. 825, 201 S.W. 324 (1918), it was said: "An often invoked rule of construction, where two acts or sections of the statutes appear to conflict, requires that each section or act shall be given meaning which will most completely effectuate the legislative intention without running counter to the other, thus harmonizing and bringing the two into a consistent whole."

The provisions of KRS 90.300 to 90.420 set out the means of creating a civil service commission. It includes the method of passing an ordinance, the method for appointment of members by the mayor, the terms of office of the members, etc. KRS 95.761(1) granted to cities of the fourth or fifth class the right to create a civil service

commission but made no provision for the steps as set out in KRS 90.300 to 90.420. Without provisions for the method of appointment and terms of office there could hardly be a commission set up to "hold examinations as to the qualifications of applicants for employment within the police or fire departments." The statutes are quite different relating to cities of the second and third class. In those two classes of cities, the examinations are conducted by the legislative body and thus there is no necessity for establishing a civil service commission for that purpose. Another indication of legislative intent is clearly shown by an examination of KRS 95.762, which provides in Paragraph (1): "The commission shall require all applicants for appointment as members of the police and fire departments to be examined as to their qualifications . . . ."

Thus, it is the opinion of this Court that the exclusionary provisions of KRS 90.-300(2) are not applicable to cities of the fourth and fifth class and that the ordinance adopted October 27, 1975, was valid and applied to all employees of the police and fire departments of the City of Providence. In this respect, the judgment of the lower court is reversed.

■ The second question presented to the Court is whether the ordinance could be repealed by the action of the "new council" of January 5, 1976. KRS 95.761(4) provides as follows:

The legislative body of the city of the fourth or fifth class after adoption of the provisions of KRS 95.520 to 95.620 relating to a policemen's and firemen's pension plan or KRS 90.300 to 90.420 relating to a civil service, may not revoke, rescind or repeal these adoptions.

It is our opinion that the statute is quite clear. Whether the fourth class city provided for civil service by the establishment of a commission or provided for a pension plan pursuant to other sections of the statute, these provisions, once adopted, cannot be repealed. The judgment of the lower court is therefore reversed in its finding that there was, in fact, a valid repeal of the ordinance.

■ The next question presented to us is whether the ordinance as adopted applied to the office of chief of police. The ordinance itself, under Sec. 6.6, entitled "Department Employees Under Service," reads as follows:

The provisions of this chapter and of Sections 90.310 to 90.410 of the Kentucky Revised Statutes shall apply to all *employees* in the Police and Fire Departments of the City of Providence . . .

It is our opinion that this does not include the chief of police. Throughout the ordinance, reference is made to only "employees" and never to "officers." As a matter of fact, the ordinance, in provisions for sick leave, vacation time, official holidays, residency, etc. refers to the fact that the "employee" must obtain permission from or report to his "department head." The chief of police is the department head for the police department. KRS 95.761(5)(a) provides as follows:

Any of the following offices, positions, and places of employment, in the police and fire departments, may be excluded from the classified service: The chief of police, assistant chief of police, chief of firemen and assistant chief of firemen.

It is the opinion of this Court that the wording of this ordinance relating solely to employees effectively excluded the chief of police therefrom. The Kentucky courts have long recognized a difference between an employee and an officer. See *Black v. Sutton*, 301 Ky. 247, 191 S.W.2d 407 (1945). The best definition of an officer is contained in *City of Lexington v. Thompson*, 250 Ky. 96, 100, 61 S.W.2d 1092 (1933). There is no question in our mind that the chief of police is an officer within the standards imposed by the courts and not an employee and was therefore not covered by the civil service ordinance of October 27, 1975, but specifically excluded therefrom. The city council could have included the chief of police by using the phrase "employees or officers" but did not do so. The judgment of the lower court is affirmed in this regard.

The final question coming before the Court concerns itself with the order dismissing the intervenors. Inasmuch as this Court has ruled that the ordinance of October 27, 1975, was valid and that the creation of the civil service commission which follows was also valid, the question is moot insofar as it relates to the appellees Rickard and Anthony. It is our further opinion that the appellee Cullen, a building inspector, did not have any interest in the transaction which was subject to the action, viz., the ordinance relating to policemen and firemen and was therefore not a proper party for intervention. Any ruling of the lower court which affected his rights or implication thereof would be mere dictum and not binding upon him and not determinative of any cause of action which he may have had. We therefore affirm the action of the lower court in dismissing the petition to intervene.

All concur.